118 So.2d 740

**STATE of Alabama ex rel. ATTORNEY GENERAL**

v.

**Norman D. SPANN.**

**4 Div. 994.**

Supreme Court of Alabama.

Dec. 17, 1959.

Rehearing Denied March 24, 1960.

MacDonald Gallion, Atty. Gen., Jos. D. Phelps, Asst. Atty. Gen., J. Theodore Jackson, Dothan, and Wm. G. Caffey, Mobile, for appellant.

Lee & McInish, Dothan, for appellee.

STAKELY, Justice.

This appeal is from a judgment of the Circuit Court of Houston County, Alabama, sustaining the demurrer of Norman D. Spann (appellee), to a petition of the State of Alabama on the relation of its attorney general (appellant), alleging that said defendant for three years last passed "has intruded and is intruding into the profession of architecture by engaging in the planning or designing for the erection, enlarging or alteration of a building or buildings for others, or by furnishing architectural supervision of the construction thereof (a profession requiring a license or certificate or other legal authorization within this state), without having obtained a certificate of registration from the State Board for the Registration of Architects of the State of Alabama, or the license required by law and is still unlawfully practicing said profession in Houston County, Alabama."

The petition prayed for an order, or rule to show cause "by what warrant or au-

thority the defendant is practicing said profession; and that he be excluded from said profession or be prohibited from practicing the same in the State of Alabama, until he shall have complied with the statutes in such cases applying."

The demurrer of the defendant attacked the statute under which the writ was issued as unconstitutional on various grounds. The court sustained the demurrer on the theory that the statute, § 8 et seq., Title 46, Code of 1940, as amended by the Acts of the Legislature of Alabama of 1943, p. 191, and particularly Section 9 of the amended statute, contains arbitrary and unreasonable clauses and is too indefinite or uncertain to meet constitutional requirements. Having sustained the demurrer to the petition, the court then dismissed the petition for the writ of quo warranto. The appeal here is from that judgment.

I. General Acts, Regular Session 1931, p. 514 et seq. (Tit. 46, § 8, Code of 1940), provided for the registration or licensing of persons practicing architecture in the State of Alabama.

The lower court in entering its judgment sustaining the demurrer to the petition for writ of quo warranto expressly bases its decision on the claimed unconstitutionality of a portion of the amendatory act approved June 22, 1943. This act purported to amend §§ 8, 9, 13, 14, 15 and 19 of Title 46, Code of 1940. See § 8 et seq., Title 46, 1955 Cumulative Pocket Part, Code of 1940.

The claim of unconstitutionality is sought to be applied only to that portion of Chapter 2 of the 1943 Act, p. 191, which purports to amend § 9 of Title 46. The portion of the amended § 9 found objectionable is the provision that,

"No person shall be required to register as an architect in order to make plans and specifications for or supervise the erection, enlargement or alteration of any building upon any farm for the use of any farmer, irrespective of the cost of such building, or any one- or two-family residence building, costing less than $10,000.00, or any domestic outbuilding appurtenant to any such one- or two-family residence regardless of cost, or of any other type building costing less than $10,000.00 (except schools, auditoriums, or other buildings intended for the mass assemblage of people)."

There is considerable discussion in briefs as to whether the unconstitutionality of the portion of the amendatory act which we have quoted above affects the question of the constitutionality of the original act. It is argued that even though the amendatory act be unconstitutional, yet the original act which required a certificate of registration from the State Board for the Registration of Architects of the State of Alabama would not be affected. We see no point in considering the matter here referred to since upon due consideration, we do not think that the act, as amended, is unconstitutional.

■ It may be generally stated that in many states statutes are in force which regulate architects in the practice of their profession and these statutes require that those intending to engage in the profession secure from the proper board, commission or officer, a license or certificate to practice. The state in the exercise of the police power may thus regulate the practice of architecture. 3 Amer.Jur. § 3, p. 998.

It may be also noted here that there are several cases from other jurisdictions in which exemptions similar to the exemptions provided in the Act of 1931 are upheld as valid. Bollin v. Fahl, 232 Mich. 658, 206 N.W. 495; People ex rel. Laist v. Lower, 251 Ill. 527, 96 N.E. 346, 36 L.R.A.,N.S., 1203; Ex parte McManus, 151 Cal. 331, 90 P. 702.

■ As we have heretofore indicated, the only provision of the amendatory act of 1943 which was held by the lower court

to be arbitrary, unreasonable and too indefinite and uncertain to meet constitutional requirements, is the provision exempting those making plans and specifications for a one or two family residence costing not more than $10,000 from registering and obtaining a license as an architect.

It is our judgment that the legislature had the right and power to determine from the kind of building and its use, whether protection of the public requires that the plans and specifications therefor be prepared by a registered, licensed architect. A small building comparatively simple in design and structure and to be used by comparatively few people, for example a one or two family dwelling, might with reason be considered and in fact was considered by the legislature in a class which does not require the expert services of an architect. It seems to us that this is within the inherent power and authority of the legislature. The fact that a residence could be built for $10,000 or less would practically insure both smallness, simplicity and use by a few people and the combination would certainly form a basis upon which the legislature could classify these comparatively cheap and small family units as buildings which do not require that their plans and specifications be drawn by a registered and licensed architect. This is a matter which seems to us to be peculiarly within the province of the legislature and was considered and passed on by it when inserting the provision in the amendatory statute, which the lower court condemned.

From what we can ascertain there are statutes in other states containing provisions exempting from the operation of the statute buildings costing less than a specified amount. For example, the limit was placed by law at $10,000 for residences in the Arizona architect statute [A.R.S. § 32–101 et seq.]; at $5,000 in the New Mexico statute [1953 Comp. § 67–12–1 et seq.]; at $7,500, respectively, in the Illinois and Idaho statutes [Ill.Rev.St.1959, c. 10½, § 1

et seq.; I.C. § 54–301 et seq.]. The North Carolina, Michigan and Nebraska statutes [G.S. § 83–1 et seq.; Comp.Laws 1948, § 338.551 et seq.; N.R.S. 623.010 et seq.] fix the limit at $20,000. Florida, Arkansas, Minnesota, New York, Oklahoma, Pennsylvania, Utah and Georgia fix the limit at $10,000 [F.S.A. § 467.01 et seq.; Ark.Stats. § 71–301 et seq.; M.S.A. § 326.02 et seq., Education Law, § 7301 et seq.; 59 O.S.1951 § 45.1 et seq.; 63 P.S. § 21 et seq.; R.C.M. 1947, § 58–3–1 et seq.; Code, § 84–301 et seq.]. In most of these statutes this provision of the act is substantially identical with the provision of the Alabama statute as amended in 1943. Apparently the legislatures of all of these states found a sound basis for classifying buildings on a cost basis and so far as we have been able to ascertain, there is no case in which such a provision has been criticized much less held so arbitrary as to be beyond the province of the legislature.

■ It is argued by the appellee that under the amendatory act one drawing plans and specifications for a one or two family residence to cost $10,000 or less, can be made punishable by a subsequent increase in the cost of materials or by labor disputes or by some other contractor disagreeing as to what the building should cost. We do not agree with this contention. The validity of the act should not be determined on such an hypothetical basis. If one is called on to prepare plans and specifications for a one or two family residence to cost $10,000 or less and he undertakes reasonably and in good faith to prepare plans and specifications for a building which he honestly estimates will not cost in excess of $10,000, he will not be made punishable because of subsequent changes in the estimated price of materials or by strikes prolonging the work or by changes thereafter made by the person employing him. If he plans a building which he fairly and honestly estimates will cost less than $10,000 he is exempted from registering and obtaining a license as an architect and he will not be made punishable

by unforeseen circumstances. It seems to us that necessarily his plans and specifications must be prepared in the light of conditions then known to or reasonably foreseeable by him and he is not to be penalized by a change of conditions or even by a reasonable and honest underestimate. Of course he should not be allowed to evade the statute by deliberately underestimating the cost of the proposed building.

■ We believe that it is within the discretion of the legislature to determine at what point licensing is to begin and at what point it shall end. The Alabama Legislature determined in line with the legislatures of many other states that private structures costing under $10,000 were less needful of expert design than are larger structures. Requiring planners of such lower cost structures to be licensed architects would be burdensome to the public in that the cost of such structures would be increased and thereby restrictive.

A number of our statutes have afforded farmers and farm benefits as a separate classification, not as one segment of one classification. For example, all drivers of motor vehicles upon a public highway must be licensed. § 59, Title 36, Code of 1940. Under § 67, Title 36, Code of 1940, however, there is an exemption of drivers of tractors and other farm vehicles temporarily driven or moved on a highway. Such exemptions recognize a different classification, not a preferred or privileged or underprivileged segment of one class.

■ We cannot say that we know all the reasons for the classifications under the act in question. This is not necessary however. It is within the scope of legislative authority to make classifications in its regulatory enactments. Unless clearly and patently arbitrary, oppressive and capricious on its face, such classification is not subject to judicial review. Mere inequality under such classification is not sufficient to invalidate a statute. In the case of State ex rel. Shirley v. Lutz, 226 Ala. 497, 147 So. 429, 431, it was claimed that an act charging different license rates for plumbers in areas having different populations was discriminatory. In that case this court said:

"But, returning to the county as a basis of classification, plumbing is related to the public health and convenience. Regulation of such business by the requirement of examination and license of plumbers, certificates of qualification, may be referred to the police powers of the state with regard to the public health and convenience.

"The court, as of course, takes judicial notice that much of the area of our largest counties is rural, outside the corporate limits of any municipality, and that these counties have towns and cities varying much in population. But, can the court say that in the safeguarding of public health, there is no reason for uniformity in regulations, such as provided by this act, over the group of towns and cities in close proximity in one county, and over built-up areas outside municipal limits served by public or private waterworks systems?

"Our cases above cited uniformly hold that all reasonable intendments must be indulged to support the constitutionality of solemn legislative acts, and this rule applies equally in dealing with a classification basis of this kind. The court must see clearly that such classification is arbitrary and without any reasonable basis in view of the subject-matter of legislation.

"True, there is much cause for complaint in the frequent abuse of the classification rule which is now firmly established, not to be disturbed without overturning many laws of long standing with all the injury and confusion to result.

"Recognizing this rule and its limitations, courts, above all others, are

charged with a very sacred duty not to encroach upon the domain of other departments of government under our constitutional system. We must hold, therefore, that the selection of the populous county as the basis of classification in the act under consideration was and is a legislative, not a judicial question. The wisdom, or propriety of legislative acts, unless clearly invasive of constitutional rights, is not for the courts. The power of the people to legislate through their chosen constitutional representatives becomes involved."

The court in the foregoing case recognized the necessity of separate provisions for varying groups and locales and held that those classifications were for the legislature and not for the consideration of the courts unless clearly arbitrary without basis.

In Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810, this court held that the legislature was not bound to extend regulations to all cases which it might possibly reach and that as a matter of classification much must be left to sound legislative discretion. Further that while a classification must not be purely arbitrary, oppressive or capricious, mere production of inequality thereby is insufficient to invalidate a statute, but inequality, in order to encounter challenge of the constitution must be actually and palpably unreasonable and arbitrary. See also Smith v. Wolf, 160 Ala. 644, 49 So. 395.

It results that since we have concluded that the amendatory Act of 1943 in the particulars here challenged is not unconstitutional, the judgment of the lower court must be reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.